# IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

| | | |
|---|---|---|
| GLORIA S. TINZIE | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| V. | * | |
| | * | NO: 4:11CV00683 SWW |
| ARKANSAS DEPARTMENT OF | * | |
| WORKFORCE SERVICES | * | |
| | * | |
| Defendant | | |

## ORDER

Plaintiff Gloria S. Tinzie ("Tinzie") brings this employment discrimination action against the Arkansas Department of Workforce Services ("ADWS"), pursuant to Title VII of the Civil Rights Act of 1964, as amended.  Before the Court is ADWS's motion for summary judgment (ECF Nos. 17, 18, 19) on the sole remaining claim in this case: that ADWS terminated Tinzie's employment on the basis of her race.  Tinzie has filed a response in opposition (ECF Nos. 25, 26), and ADWS has filed a reply (ECF No. 30).  After careful consideration, and for reasons that follow, summary judgment will be granted in favor of ADWS.

## I.

Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  As a prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to support the non-moving party's case."  Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986).  Once the moving party has properly supported its motion for summary judgment, the non-moving party must "do more than simply show there is some metaphysical doubt as to the material facts."  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986).

The non-moving party may not rest on mere allegations or denials of his pleading but must "come forward with 'specific facts showing a genuine issue for trial.'" *Id*. at 587 (quoting Fed. R. Civ. P. 56(e)). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995).

**II.**

The following facts are undisputed.  Tinzie, who is black, worked for ADWS from  August 7, 2000 until June 10, 2010, when the agency terminated her employment.  At the time of her termination, Tinzie worked as an adjudication specialist for the ADWS unemployment insurance division at the agency's local office in Forrest City.  Sandra Burch ("Burch") served as Tinzie's immediate supervisor, Emma Lay ("Lay") served and Burch's supervisor, Ronald Calkins ("Calkins") served as the assistant director of the ADWS unemployment insurance division, and Artee Williams ("Williams") served as the director of ADWS.

On May 5, 2010, Burch sent an email message to Lay and Calkins, reporting that she had observed several visitors in Tinzie's office. *See* ECF No. 17-1 (Calkins Aff.), ¶ 5 and Ex. A-1.  In particular, Burch stated that a male visitor remained in Tinzie's office for approximately four hours on April 27, 2010.  Burch reported that Tinzie continued to perform her job duties, including calling claimants, taking statements, and making unemployment insurance determinations, with the male visitor present.  *Id*.

Calkins directed Lay to investigate Burch's report regarding Tinzie.  *See id*., ¶ 6.  In a memo to Calkins dated May 27, 2010, Lay reported that she had visited the Forrest City office on May 13, 2010 for the purpose of obtaining witness statements from office staff as to whether they had observed unauthorized visitors in Tinzie's office for extended periods of time.  *See id.*, Ex. A-2.  Lay provided

Calkins copies of the witness statements she had obtained, which revealed that nine out of thirteen staff members reported that they had observed unauthorized visitors in Tinzie's office. *See id*., Ex. A-2. Tinzie provided a statement that only her husband, her daughters, and a student had visited her and that no visitor had ever remained in her office for more than fifteen to twenty minutes. *See id.*

In a memo to Calkins dated June 1, 2010, Lay recommended that Tinzie be terminated on the ground that she misrepresented "the length of time she [had] entertained unauthorized visitors in her office during work hours." *See* ECF No. 17-1, Ex. A-3 (June 1, 2010 Memo).  In her memo,  Lay noted: "Ms. Tinzie's supervisor, Sandra Burch, and other staff in the Forrest City Office have observed unauthorized visitors in Ms. Tinzie's office for up to four hours."  *Id*. Calkins testifies by affidavit that based on Lay's report, he recommended that the agency terminate Tinzie's employment, and Williams adopted his recommendation.  Calkins testifies that in making his decision, he also considered that Tinzie's work entailed collecting confidential information used to determine applicants' eligibility for unemployment insurance and that Tinzie's conduct presented a risk of exposing confidential information.

By memo dated June 10, 2010, Tinzie received notice that her employment was terminated on the ground that she had misrepresented a material fact in connection with a work-related activity and an agency investigation, which amounted to a "2.c Class A Infraction as set forth in [ADWS] Disciplinary Rules and Procedures."  *See* ECF No. 17-1, Ex. A-6 (June 10, 2010 Memo).

### III.

Tinzie claims that she was terminated based on her race and treated less favorably than similarly-situated white employees.  ADWS contends that Tinzie cannot make out a *prima facie* case of disparate treatment.  Further, ADWS asserts that even assuming a *prima facie* case, it had a legitimate, nondiscriminatory reason for terminating Tinzie's employment: "that she had unauthorized visitors in her office for extended periods of time and that when confronted about the matter, she lied to her supervisor despite overwhelming evidence to the contrary."  Docket entry #18, at 13.

Because ADWS has articulated legitimate reasons for terminating Tinzie's employment, the Court will presume the existence of a *prima facie* case and move directly to the issue of pretext and the determinative issue of causation.[1]  *See Stewart v. Independent School Dist. No.* 196, 481 F.3d 1034, 1043 (8th Cir. 2007).  At this stage, Tinzie shoulders the burden to (1) discredit ADWS's asserted reason and (2) show that the circumstances permit a reasonable inference that race was the real reason for the adverse employment action.  *See Johnson v. AT & T Corp.*, 422 F.3d 756, 763 (8th Cir. 2005).

In an effort to show pretext, Tinzie claims that two white ADWS employees, Justin Majors and Ricky Young, also committed a "Class A Infraction" but were not terminated.   Additionally, Tinzie notes that in the course of the investigating whether she had permitted unauthorized visitors to remain in her office, ADWS obtained a information that Neysa Pendergrass, who is white and also worked in the Forrest City office, regularly permitted her husband to stay in her office several hours each day.  *See* ECF No. 25-1 (Ex. C, Tinzie Aff.).  Tinzie testifies that Burch did not investigate whether Pendergrass received unauthorized visitors.  *Id*.

Regarding Justin Majors, ADWS presents undisputed evidence that during the relevant time period, he worked as a trade technician for the agency, and he and Tinzie did not share the same supervisors.  ECF No. 17-2 (Williams Aff., ¶ 13); *see also* ECF No. 17-2, Ex. B-6 (December 19, 2008 Memo).  Majors possessed a firearm in his office in violation of agency rules.  *See id*.  However, the

---

[1]To establish discrimination based on disparate treatment, Tinzie shoulders the burden to show, with circumstantial or direct evidence, that the complained-of conduct was motivated by race discrimination.  Because Tinzie presents no evidence that directly points to the presence of a discriminatory motive, she must establish a *prima facie* case of discrimination by showing that (1) she is a member of a protected class; (2) she met the legitimate expectations of her employer; (3) she suffered adverse employment action; and (4) similarly situated employees that were not members of her protected class were treated differently.  *See Philip v. Ford Motor Co.*, 413 F.3d 766, 768 (8th Cir. 2005).  If Tinzie makes a *prima facie* showing, the burden shifts to ADWS to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Then, the burden shifts back to Tinzie to present evidence that the stated reason for her termination is pretext for  discrimination.  *Id*.

evidence shows that when Majors was confronted about his transgression, he apologized and immediately complied with directions to remove the firearm from the premises. *See id.*

ADWS also presents evidence regarding Ricky Young, who works at the agency's Fort Smith office as a workforce specialist. ECF No. 30-1 (Williams Aff., ¶¶ 2-3). Williams testifies that in 2007, Young received a two-day suspension for violating agency policy regarding sick leave. *Id.* Specifically, Young claimed that he needed time off for a medical procedure, but he spent his "sick leave" in the "deer woods." *Id.* Williams testifies that unlike Tinzie, Young immediately admitted that he had violated agency rules . *Id.*

The Court finds that Tinzie has failed to show that she is similarly situated to Majors or Young. Tinzie has the burden to show that she and "'the individuals used for comparison ... dealt with the same supervisor, [were] subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances.'" *Twiggs v. Selig,* 679 F.3d 990, 994 (8th Cir. 2012)(citing *Cherry v. Ritenour Sch. Dist.*, 361 F.3d 474, 479 (8th Cir.2004)). Here, the undisputed evidence shows that Tinzie, Majors, and Young worked under different supervisors, and they violated different workplace rules. Furthermore, the evidence shows that Tinzie's conduct raised a special concern regarding the confidentiality of agency information, a factor that was not t at issue with the disciplinary matters involving Majors and Young.

As for Tinzie's claim that ADWS failed to investigate a report that Neysa Pendergrass regularly permitted her husband to stay in her office several hours each day, Williams testifies that Pendergrass is not employed by the ADWS. According to Williams's affidavit testimony, Pendergrass is a career advisor employed by a federally-funded ADWS partner that assists people in finding affordable housing, among other things. Williams testifies that ADWS has no authority to discipline Pendergrass, and Tinzie provides no evidence to the contrary.

Viewing the evidence in a light most favorable to Tinzie, the Court finds that she has failed to

present evidence that the stated reason for her termination is pretext for race discrimination.  Accordingly, the ADWS is entitled to summary judgment in its favor.

**IV.**

For the reasons stated, Defendant's motion for summary judgment (ECF No. 17) is GRANTED.

There being no issues remaining for trial, pursuant to the judgment entered together with this order, this action is DISMISSED WITH PREJUDICE.

IT IS SO ORDERED THIS 12TH DAY OF MARCH, 2013.


/s/Susan Webber Wright
UNITED STATES DISTRICT JUDGE